```
 1                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF PENNSYLVANIA
 2
                                   )
 3    ANDREW PERRONG,              )    2:22-cv-01085-CFK
                                   )
 4                   Plaintiff,    )    James A. Byrne U.S.
                                   )    Courthouse
 5    vs.                          )
                                   )    Philadelphia, PA
 6    TIMESHARE HELP SOURCE, LLC,  )
                                   )    June 30, 2022
 7                   Defendant.    )    9:02 AM
 8
                  TRANSCRIPT OF MOTION TO COMPEL HEARING
 9                BEFORE THE HONORABLE CHAD F. KENNEY
                    UNITED STATES DISTRICT JUDGE
10
      APPEARANCES:
11
      For the Plaintiff:        ANTHONY I. PARONICH, ESQ.
12                              PARONICH LAW, P.C.
                                350 Lincoln St., Suite 2400
13                              Hingham, MA 02043
14    For the Defendant:        ARTHUR D. GOLDMAN, ESQ.
                                LAW OFFICE OF ARTHUR D. GOLDMAN,
15                              LLC
                                1800 E. Lancaster Ave., Suite M
16                              PO Box 115
                                Paoli, PA 19301
17
      Also Present:             Christopher Prosser
18                              Chief Litigation Paralegal
19    ECR OPERATOR:             CHRIS KUREK
20
21
      Proceedings recorded by electronic sound recording.
22
                     Karen Schiffmiller, CET**D-570
23                            eScribers
                      7227 North 16th Street
24                          Suite #207
                        Phoenix, AZ 85020
25                        (973) 406-2250
```



1                                I N D E X

2    RULINGS:                                    PAGE   LINE
     Court orders plaintiff to depose            14     21
3    corporate designee.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

Colloquy

```
 1            THE CLERK:  All rise, please.  The United States
 2    District Court for the Eastern District of Pennsylvania is now
 3    in session.  The Honorable Chad F. Kenney presiding.
 4            THE COURT:  All right.  Perrong v. Timeshare.  And
 5    it's 22 -- 1085 of '22.  Counsel for the record?
 6            MR. ANTHONY PARONICH:  Good morning, Anthony Paronich
 7    for the plaintiff, and with me is my client, Andrew Perrong.
 8            THE COURT:  All right.  Good morning.
 9            MR. ARTHUR GOLDMAN:  Good morning, Your Honor.  Arthur
10    Goldman for the defendant, and with me is representative of the
11    defendant, Timeshare Help Source, Christopher Prosser.
12            THE COURT:  All right.
13            And how do you spell your last name?
14            MR. CHRISTOPHER PROSSER:  P-R-O-S-S-E-R.
15            THE COURT:  And what's your position with Timeshare?
16            MR. PROSSER:  I'm with the legal department.
17            THE COURT:  All right.  Have a seat.
18            So, where are we with discovery?
19            MR. PARONICH:  Thank you, Your Honor, and where we are
20    is, we had originally filed this motion.  We had gotten a
21    response and we got draft responses late last night.  There was
22    a surreply filed on the docket by the defendant.  Attached to
23    that surreply were, I think what they called supplemental
24    responses, where, the principal issue that remains in the case,
25    is like we talked about at the Rule 16 conference a few months
```

Colloquy

1    ago, was that in order to evaluate this case, in order to

2    perform an expert analysis, we need to get records of calls

3    that were made, so they can be compared to the national do-not-

4    call registry by an expert, to see the scope of what's at issue

5    here.

6              We reviewed the supplemental responses that came in

7    last night, and with respect to who contacted the plaintiff or

8    where the defendant obtained the plaintiff's phone number, the

9    response is that the investigation continues, and that they

10   aren't sure.

11             THE COURT:  All right.  Counsel?

12             MR. GOLDMAN:  Well, I mean, there's a simple answer to

13   that.  There's third-party vendors, which were identified in

14   our discovery, that handle these calls.  The calls are not

15   actually made by my client.  They engage outside third-party

16   vendors.  Those vendors are the ones that have possession of

17   the records.  So if the plaintiff wants to serve subpoenas on

18   them, they've got the information.  They've got the names and

19   the ways they can locate them.  We don't have it, and we don't

20   have employees who did any of the things that were asked of us.

21             So I mean, we presented a lot of information in here.

22   And we did present a lot of pages of discovery.  Of course,

23   some of the discovery involved the plaintiff's activities,

24   which, I mean, it's obvious to us that the plaintiff is engaged

25   in close to one hundred different law suits of a similar



Colloquy

1  nature, and --

2          THE COURT:  All right.  So let me -- let's just step

3  back.  Do you deny that a call was made on your behalf, on

4  Timeshare behalf, to the defendant (sic)?  I want to parse out

5  your defenses to this.

6          MR. GOLDMAN:  Sure.

7          THE COURT:  The complaint is very clear, and it's very

8  specific as to what occurred, okay.  And you answered it.

9  There was not a motion to dismiss, which, in reviewing it, it

10 made it very clear why they were suing, on what basis they were

11 suing.  So they got a phone call on behalf of Timeshare, Inc.

12 So Timeshare, Inc. is -- are they saying, did we make the phone

13 call, didn't make the phone call?  What's their response, and

14 who is the person that made the phone call?

15         MR. GOLDMAN:  Well, the answer to that is, we directly

16 did not make the phone call.

17         THE COURT:  But you ordered it to be made?

18         MR. GOLDMAN:  We have a system where phone calls are

19 made.  We can't say whether we did or we didn't.

20         THE COURT:  So that's what you're going to say to the

21 jury?  Our defense is, in terms of making these phone calls,

22 our defense -- we don't have a defense on that.  We just put

23 them out there, and if -- they're made on our behalf.  And our

24 defense is, guess what?  If they hit -- if they're doing

25 something illegal, do not disturb, we don't know anything about

Colloquy

```
 1   it.

 2              MR. GOLDMAN:  Well --

 3              THE COURT:  Is that your defense?

 4              MR. GOLDMAN:  No, our defense is, we're in the early

 5   part of this litigation here, and we're engaging in the

 6   discovery.  I mean, you're talking about thousands and

 7   thousands of potential phone calls.  So whether --

 8              THE COURT:  Right.  And welcome to the world of class

 9   action.

10              MR. GOLDMAN:  -- that actual phone call -- right.

11              THE COURT:  So they are entitled to those phone calls.

12              Now, I'm talking to legal counsel.

13              Are you fulltime with Timeshare, or how are you -- do

14   you work for them?  Or there is an office your work out of?

15              MR. PROSSER:  I work out of an office, but I'm not

16   fulltime with them.

17              THE COURT:  And so what's your arrangement working for

18   them, that you're legal counsel for them?

19              MR. PROSSER:  Right now, I'm handling all the

20   logistics of the discovery.

21              THE COURT:  So you've been hired to do that.

22              MR. PROSSER:  I -- no.

23              THE COURT:  See, and I'm looking for a responsible

24   person in your company to respond to discovery that's not being

25   produced.  And that has to be produced.  Those calls, those
```

Colloquy

1    lists, all that has to be produced.  You have a very specific

2    phone call being made here.  And now you're saying, we have no

3    idea about it.  That's not going to cut it in this courtroom.

4    I don't -- I'm not even seeing your defenses, and it's your

5    defense, and you're saying we're early in discovery about our

6    defenses.  That tells me you don't have any defenses.

7            MR. GOLDMAN:  Well, no, what I'm saying is --

8            THE COURT:  Look, I know you're a very smart guy.  And

9    usually I have the party in here, because it's not the attorney

10    that's the issue, it's the party.  My concern is the attorney

11    is the issue here, in terms of getting discovery.  And I don't

12    even know that you come in, what do you know about your client?

13    Who do you deal with, Counsel, directly in your company?

14    Who -- what person?  Give me a name.

15            MR. PROSSER:  For my company?  I work in the legal

16    department.

17            THE COURT:  Yeah, so who in that company do you answer

18    to?

19            MR. PROSSER:  I answer to a guy named Dan.

20            THE COURT:  Dan?

21            MR. PROSSER:  Human.

22            THE COURT:  This is what I'm dealing with.  I can't

23    even get somebody in here.  Dan.  I answer to a guy Dan.  This

24    is the guy that's representing the party?  So I need the -- now

25    you tell me, the only thing, Judge, I know, is there's some

Colloquy

1  owner out in Colorado.  They own everything.  A corporation.

2  So I now need the shareholders, the general partners, et

3  cetera, of that corporation.  Because you guys are representing

4  somebody.  You don't even know who you're representing.

5          MR. GOLDMAN:  Well, excuse me for one second, Your

6  Honor.

7          Your Honor, can we have a sidebar discussion with you

8  about what's currently happening with corporate management

9  that's privileged information; it can't be shared?

10         THE COURT:  Yeah, you can't, because this is not going

11  to go well for counsel.  Because you don't have people that are

12  responding.  I don't know what your defenses are.  Do you not

13  use generate -- this technology that generates phone calls?  Is

14  this one phone call that slipped through the cracks, that we

15  have a method in place?  Or do we just wipe our hands of this

16  and say, you guys make all the phone calls for us?

17         MR. GOLDMAN:  No, I mean, in order to figure out if

18  one of our vendors made the phone call, we have to get

19  cooperation from those vendors to give us the information.

20         THE COURT:  But they're your vendors, how do they not

21  get -- cooperate with you, but how do you get cooperation, if

22  you're not even dealing with somebody in the company that hires

23  them, that says, give us cooperation?

24         MR. GOLDMAN:  Right.  I mean, I understand your --

25  what you're saying, Your Honor.  And there are certain things

Colloquy

1   going on, as I indicated with the business, that I'd prefer to

2   discuss confidentially.  That I'm not at liberty to disclose.

3   And Mr. Prosser is not at liberty to disclose publicly.

4          THE COURT:  I don't know how that -- I can have a

5   sidebar ex parte on something like that.  I really don't.  I

6   mean, we either answer the discovery, or we say, we can't

7   answer the discovery, because there's no one to answer the

8   discovery.  We have a company in a total state of disrepair,

9   and that they're paying me money to say, we can't answer the

10  discovery.  There's got to be some responsible person that can

11  get in here.  And then I -- and this is part of the problem.

12  You're laying out a defense that you're creating, not your

13  clients aren't creating, you're creating, and then see if you

14  can backdoor into it, and your clients aren't giving you any

15  information.

16         Believe me, I understand the serial filer.  And

17  there's defenses to the serial filer.  But if you have

18  defenses, let them know what they are.  But the fact that they

19  have a phone call -- they're getting a phone call and taking

20  advantage of it, that's the way Congress set it up, whether you

21  like it or not.  The fact that it -- the cell phone now is

22  considered residential, that's the way that legislation still

23  exists; it's being interpreted.  Do I personally think they

24  need to review the legislation and update it?  Yeah, but that's

25  not a defense.



Colloquy

1          And all this that you're throwing out makes me nervous

2    that you don't really have somebody that you're dealing with as

3    a client that can be responsive to what they're doing.  They're

4    either doing it or not doing it.  And I'm not hearing defenses

5    saying they're not doing it.   The defense is, oh, they're bad

6    guys.  Well, that's not a good defense.

7          MR. GOLDMAN:  I mean, arguendo that -- assuming they

8    had the phone number that we made -- somebody acting on behalf

9    of Timeshare Help Source made the phone calls, then I mean,

10   we're willing to proceed under that assumption, that one of

11   these vendors made the call.  But in terms of the specific

12   details of who made that phone call and when that phone call

13   was made, we frankly do not have the information yet.

14          THE COURT:  Well, let me ask you this.  Who's the

15   30(b)(6) designee that's going to answer all the questions

16   about how Timeshare operates and how they get to their vendor?

17   Who is that person?

18          MR. GOLDMAN:  We haven't determined it yet.  I mean --

19          THE COURT:  Yeah.  Do you have any names?

20          MR. GOLDMAN:  I need to.

21          THE COURT:  Do you have any names?  Have you discussed

22   it with anybody?  You have an opportunity to discuss it with

23   anybody?

24          MR. GOLDMAN:  Yeah, I mean, Eduardo Balderas has been

25   somebody who has had most of the information that we use --

Colloquy

1          THE COURT:  Who?

2          MR. GOLDMAN:  Eduardo Balderas.  He actually is the

3    person who did the verification on the answers to the

4    discovery.

5          THE COURT:  And where is he?

6          MR. GOLDMAN:  He's located -- he's in --

7          MR. PROSSER:  In Texas.

8          MR. GOLDMAN:  -- in Texas.  We've got --

9          THE COURT:  And what's his position?

10          MR. GOLDMAN:  I think he's some sort of a sales --

11    national sales director.  So he's -- the problem -- part of the

12    issue is, we've got offices in Missouri, Texas, and Colorado.

13    It's not a unified, central office.  So --

14          THE COURT:  Yeah, I mean, what I'm saying is, Counsel,

15    is you can't be running cover for them at this stage.  They

16    need to come up and step up and answer, and you got to be

17    saying, look, I got to lay it out for you.  This is where we

18    are and you got to produce this stuff.  I can't keep running in

19    to the judge and saying, we don't have to produce this stuff

20    because they're bad guys.  And if we have a defense, you got to

21    show me the information that there's --

22          MR. GOLDMAN:  And --

23          THE COURT:  -- a defense.

24          MR. GOLDMAN:  I mean, in defense of Mr. Prosser or

25    myself, we've been attempting to get those questions answered.

Colloquy

```
 1              THE COURT:  There's no doubt in my mind, and that's
 2   why I'm trying to get somebody in here.  And if I get somebody
 3   in here, I'm not talking to you then, even though I'm talking
 4   to you, I'm really talking over your head to them, to get this
 5   straight.
 6              MR. GOLDMAN:  I don't disagree.
 7              THE COURT:  So what's the information on Mr. Balderas?
 8              MR. GOLDMAN:  He's --
 9              THE COURT:  Like his contact information?  I want it
10   now put on the record.
11              MR. GOLDMAN:  I mean, it's in -- the office is in
12   Texas.  I don't have it with me.  He doesn't have it.
13              But do you have a phone number?
14              MR. PROSSER:  We can provide it.
15              MR. GOLDMAN:  We can provide it probably within --
16              THE COURT:  Are you in contact with him?
17              MR. PROSSER:  I am not today.
18              THE COURT:  No, have you been in contact with him?
19              MR. PROSSER:  When he signed the interrogatory
20   answers.
21              THE COURT:  All right.  And the interrogatory answers
22   were not good at all.  All I saw were a bunch of objections and
23   we're not answering this, and this is out of bounds and that's
24   out of bounds.  And you got to tell these people that it's not
25   out of bounds, and somebody's got to pay attention to this, and
```

Colloquy

1    start getting some information.

2            So I would think the national sales manager would have

3    a very good idea of how the company runs.  But who is the

4    person that is the nexus for all these hubs that you send out

5    for the phone calls?  I guess he would have to be --

6            MR. PROSSER:  He is.

7            THE COURT:  -- because he's running with all this.  He

8    would be the one that would know about that.

9            MR. PROSSER:  Yeah.

10           MR. GOLDMAN:  Yeah, he is.

11           THE COURT:  All right.  So you're going to take a

12   deposition of him right away.  And that's without -- you can

13   recall him, but the fact that counsel themselves cannot get

14   information from their own company, I'll let you do a 30(b)(6)

15   designee deposition, just to find out who's who and how they

16   operate, and where all their documents are, and how they assign

17   all these vendors, and who are all the contact people at all

18   these vendors.

19           He's got to come in, and he's got to testify and he's

20   got to know this stuff.  You can do it by video, all right.

21   You can do it by video.  And I want it done within the next

22   three weeks.  It can be done by video, and I'll -- and if he's

23   not prepared, he's got to read -- you got prepare -- he's got

24   to be prepared to answer the questions.  If he's not prepared,

25   I'm bringing in, in this courtroom, to have the deposition.

Colloquy

1        Do you understand me, Counsel?

2        MR. GOLDMAN:  Absolutely, Your Honor.

3        THE COURT:  And this -- I'm telling you, this is for

4   your benefit as much as anybody else.  You have a defense, but

5   how are you going to defend this case?  I mean, think about it.

6   How are you going to do a motion for summary judgment?  How are

7   you going to defend the class certification?  By saying, oh, we

8   don't know.  I'm going to certify the class based on I don't

9   know.  I mean, you know; you're a smart guy.  You know all the

10  things that have to be done for them to establish class

11  certification.

12       MR. GOLDMAN:  Yes.

13       THE COURT:  But to file a motion for summary judgment,

14  built within a motion to compel, that's just not going to cut

15  it.  That's almost saying, we did it.  When you don't have the

16  law, you just yell the loudest.  So we got to start somewhere

17  to get a foundation.  So let him know that -- and we can do it

18  the hard way or the easy way, but if I got to get a judge down

19  in Texas to go in there and grab this guy, I'm going to do it.

20       But right now, we'll do it the easy way.  Tell him he

21  has to be deposed.  You send out the notice for deposition, and

22  say, you guys can't duck this.  You either had a mechanism not

23  to do not the calls or you didn't even care.  And if you lay --

24  let it all up to the vendor, saying, you let it all up to the

25  vendors, then you're right, at that point, all those vendors



Colloquy

1    are going to start getting subpoenaed.

2         But certainly, I got to believe, they -- the vendors

3    were filing reports with Timeshare to say, these are all the

4    calls we gave you.  These are all the hits you got.  They do

5    that.  The national sales person isn't stupid.  He's not giving

6    them money, and then saying, here, do your best.  They're

7    giving reports and saying, this is what we did; this is who we

8    called.

9         So the national sales manager and who's ever running

10   this company has to know that they're not dealing with stupid

11   people.  I mean, I'm not the smartest guy in the room, but you

12   know what?  Don't sell me the Brooklyn Bridge either, because I

13   have a feeling that you probably don't have title to it.  All

14   right.  So it's very common sense.

15        So I'm going to reschedule this hearing in three

16   months -- three weeks and a day.  This very hearing in three

17   weeks and a day, and then I'm going to find out where we are.

18   And then based on the information that you get during this

19   designee deposition, I'm going to allow you to then file a

20   second set of interrogatories and requests, if need be.

21        The easier way we're just to go ahead and provide

22   this, but I want it now and then have his deposition later, but

23   that's not going to happen now.  He's got to come in and

24   explain all that.  And he better -- he should start compiling

25   all those reports, because guess what?  I know he has those



Colloquy

1    reports on his record.  I know he has it on his desktop.  Every

2    one of them from every one of those vendors.  And as part of my

3    order, I'm going to say, none of that information can be

4    destroyed.  All right?

5              MR. PARONICH:  Your Honor?

6              THE COURT:  I don't know that we can do anything else

7    right now, other then what we can do in three weeks.

8              MR. PARONICH:  Your Honor, if I may, one of the issues

9    that came through in the briefing that I don't think will be

10   impacted by a deposition is, we provided substantial case law,

11   that I understand that these calling records are not in the

12   physical possession of the defendant.  But if they hired these

13   vendors to make phone calls on their behalf, I think they're

14   right within their -- well within their Rule 34(A) control.

15             THE COURT:  No, their agents and they're in their

16   control.  So they can get that information, and they need to

17   get that information.

18             MR. PARONICH:  And I understand, Your Honor, so I just

19   want to be clear that part of the Court's order today, because

20   it doesn't impact the deposition, is the defendant should be

21   going to those vendors, collecting those call records, and

22   producing them?

23             THE COURT:  Yeah, absolutely.

24             MR. PARONICH:  Thank you, Your Honor.

25             THE COURT:  And the problem is, counsel does not have

Colloquy

1    somebody they can talk to, to tell them they have to do that.

2    So now they're going to have some teeth in this with this sales

3    manager.

4            MR. GOLDMAN:  Your Honor, could I address one of the

5    issues that you put in the order on the 29th?  You requested us

6    to make a record who represented to me that the sole owner of

7    Timeshare is Mainline Partners and the basis.  That would be

8    Mr. Prosser.

9            THE COURT:  All right.

10           MR. GOLDMAN:  He had indicated to me --

11           THE COURT:  So Mr. Prosser, do you know of any of the

12   owners of Mainline?

13           MR. PROSSER:  I do not --

14           THE COURT:  Did you research that?

15           MR. PROSSER:  I do not, Your Honor.

16           THE COURT:  Yeah.  So do you understand my frustration

17   here?

18           MR. PROSSER:  I understand your frustration.  But

19   Mainline --

20           THE COURT:  So I need you to do some research on that.

21           MR. PROSSER:  Yes, sir.  But Mainline Partners

22   acquired that company after these calls were made.  They were

23   not a party to these calls.

24           THE COURT:  Yeah, but still, somebody has to be

25   responsible.  Mainline is going to be interested in this



Colloquy

1    litigation.  It's going to be extremely interested in this

2    litigation.  As a matter of fact, I'd be surprised if they

3    weren't made aware of this litigation at the time they acquired

4    it.  And guess what?  If they weren't made aware of this

5    litigation at the time they acquired the company, they're not

6    going to be very happy, I would think.

7            I know I wouldn't be, because that's part of due

8    diligence, and that's part of submitting records, so I got to

9    be able to think they're very aware of it, and as owners of the

10   company, they would have the authority and purpose in their own

11   counsel to push the -- to push the sales managers of the world

12   of this company to answer the questions, and give proper

13   discovery to the Court, through the Court.

14           So you've got to let them know I'm not going away.

15   All right?  And that's how I operate.  I have 130, 150 cases;

16   you're always going to have ten that you're in the courtroom

17   all the time.  And if he needs to come up from Texas, he'll

18   come up from Texas.  And I'm just trying to get this case on

19   track.  All right?

20           So we'll give you a date in three weeks.  Is there a

21   date in three weeks and a day that doesn't work for you guys?

22           MR. PARONICH:  Sorry, Your Honor.  I'm checking my

23   calendar.

24           THE COURT:  Who's this guy in Uzbekistan, by the way?

25           MR. PROSSER:  He's now the former owner, Your Honor.

Colloquy

 1  Mainline Partners acquired it.

 2          THE COURT:  So at this point, he just doesn't care, I

 3  would think, right?

 4          MR. PROSSER:  I would think.

 5          MR. GOLDMAN:  I have a surprisingly free -- anything

 6  could be moved.

 7          MR. PARONICH:  Your Honor, if we could do Friday, July

 8  22nd, that would work for us.  I think that's -- if my math is

 9  right, literally three weeks and a day.

10          THE COURT:  Well, I'll look at my calendar.  How about

11  the next week after that?  You're free and clear, right?

12          MR. PARONICH:  Yes, Your Honor.

13          THE COURT:  I just want to make sure somebody is not

14  on vacation.

15          MR. GOLDMAN:  Can we do --

16          THE COURT:  So July 22nd, and the week after July

17  22nd.

18          MR. GOLDMAN:  Are good.

19          THE COURT:  I'm asking you.

20          MR. GOLDMAN:  Yeah, July 22nd is actually good, and so

21  is --

22          THE COURT:  So is the following week, right?

23          MR. GOLDMAN:  The 29th is better.  Yeah.

24          THE COURT:  We'll give you a date then.  All right?

25          MR. PARONICH:  Yes, Your Honor.



Colloquy

1          THE COURT:  Anything else, Counsel?

2          MR. PARONICH:  Not for the plaintiff, Your Honor,

3    thank you.

4          THE COURT:  All right.

5          I want you to get that notice of deposition out today.

6          MR. PARONICH:  Yes, Your Honor.

7          THE COURT:  So get the proper spelling, et cetera.

8    All right?

9          MR. PARONICH:  Well, then, Your Honor --

10         THE COURT:  If there's a problem with that, let me

11    know, because again, I'm going to get somebody in here and get

12    this moving.

13         MR. PARONICH:  And Your Honor, sorry, just to clarify,

14    when you said the proper spelling, I got confused.  Is --

15         THE COURT:  For the 30(b)(6) designee deposition --

16         MR. PARONICH:  Under --

17         THE COURT:  -- that you're going to take within the

18    next three weeks.

19         MR. PARONICH:  Which we are, Your Honor, but if we're

20    going to notice a 30(b)(6), we'll do it based on topics, right?

21    We could notice a 30(b)(1) of this individual, and we're happy

22    to do either.

23         THE COURT:  I would do the 30(b)(1) of the individual

24    based on this Court's representation today, and give a listing

25    of topics that you're going to discuss, and he needs to be

Colloquy

1    prepared to discuss them. And if you need -- if counsel needs

2    the Third Circuit case on that to review with him, I'm glad to

3    give it to you.

4              MR. PARONICH:  Thank you, Your Honor.

5              THE COURT:  All right?

6              MR. GOLDMAN:  That's okay.

7              THE COURT:  Counsel, are you good with this?

8              MR. GOLDMAN:  I'm fine, Your Honor.

9              THE COURT:  All right. Because some people just sit

10   and by naturally look amused, and you look amused, so --

11             MR. GOLDMAN:  Oh, I'm not amused.

12             THE COURT:  Okay. Some people just sort of have that

13   kind of amused look when they're not really amused.

14             MR. GOLDMAN:  Well, I apologize for my face, Your

15   Honor.

16             THE COURT:  No, you don't have to apologize. I just

17   want to be sure that -- I just want to be sure that we're all

18   locked in.

19             MR. GOLDMAN:  I take this very seriously.

20             THE COURT:  All right. All right, good.

21             All right. Well, then everybody have a good 4th.

22             MR. GOLDMAN:  Thank you, Your Honor.

23             THE COURT:  Thank you.

24             THE CLERK:  All rise, please.

25        (Proceedings concluded at 9:26 o'clock, a.m.)



(973) 406-2250 | operations@escribers.net | www.escribers.net

1              C E R T I F I C A T I O N

2

3            I, Karen Schiffmiller, court-approved transcriber, do

4    hereby certify the foregoing is a true and correct transcript

5    from the official electronic sound recording of the proceedings

6    in the above-entitled matter.

7

8

9    _____        July 10, 2022

10

11   Karen Schiffmiller, CET-570              DATE

12

13

14

15

16

17

18

19

20

21

22

23

24

25


(973) 406-2250 | operations@escribers.net | www.escribers.net